# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| ZEPHANIAH BULLOCK,<br><br>        Plaintiff,<br><br>v.<br><br>WARDEN NEVENS, *et al.,*<br>        Defendants. | 3:14-cv-00195-RCJ-VPC<br><br>**REPORT AND RECOMMENDATION<br>OF U.S. MAGISTRATE JUDGE** |

This Report and Recommendation is made to the Honorable Robert C. Jones, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is defendants' motion for summary judgment (#36). Plaintiff opposed (#40), and defendants replied (#42). Having reviewed the motion and papers, the court recommends that defendants' motion be granted.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Zephaniah Bullock ("plaintiff") is an inmate in the custody of the Nevada Department of Corrections ("NDOC"). Presently, plaintiff is incarcerated at Ely State Prison ("ESP") in Ely, Nevada. Pursuant to 42 U.S.C. § 1983, and as permitted by the screening order (#3), plaintiff brings two civil rights claims against NDOC officials. Against ESP correctional officer Mark Parades ("Parades"), plaintiff brings an Eighth Amendment claim for alleged sexual assault; and against NDOC Deputy Director Sheryl Foster ("Foster"), plaintiff brings a First Amendment claim for denial of access to the courts. In short, plaintiff alleges that Parades grabbed his genitals during a body search that preceded plaintiff's return to his cell after time in the recreation yard, and that Foster delayed her second-level response to his grievance about the incident.

## II.    LEGAL STANDARD

Summary judgment allows the court to avoid unneeded trials. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court properly grants summary judgment when the record discovered by the parties demonstrates that "there is no genuine issue

1  as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.
2  56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "[T]he substantive law will identify
3  which facts are material. Only disputes over facts that might affect the outcome of the suit under
4  the governing law will properly preclude the entry of summary judgment. Factual disputes that
5  are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby*, 477 U.S. 242,
6  248-49 (1986). A dispute is "genuine" only where a sufficient evidentiary basis would allow a
7  reasonable jury to find for the nonmoving party. *Id.* "The amount of evidence necessary to raise a
8  genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing
9  versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983)
10 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)). Conclusory
11 statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts
12 are insufficient to establish a genuine dispute. *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081-
13 82 (9th Cir. 1996).

14     Summary judgment proceeds in burden-shifting steps. When the moving party bears the
15 burden of proof at trial, it must support its motion "with evidence which would entitle it to a
16 directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v.*
17 *Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal quotation omitted). In contrast, a
18 moving party who does not bear the burden of proof "need only prove that there is an absence of
19 evidence to support the non-moving party's case[,]" *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376,
20 387 (9th Cir. 2010), and such a party may additionally produce evidence that negates an essential
21 element of the nonmoving party's claim or defense, *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*,
22 210 F.3d 1099, 1102 (9th Cir. 2000). Ultimately, the moving party must demonstrate, on the
23 basis of authenticated evidence, that the record forecloses the possibility of a reasonable jury
24 finding in favor of the nonmoving party as to disputed material facts. *Celotex*, 477 U.S. at 323;
25 *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). The court views all evidence
26 and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell*
27 *v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014).

28

1    Where the moving party meets its burden under Rule 56, the nonmoving party must "designate specific facts demonstrating the existence of genuine issues for trial. This burden is not a light one." *In re Oracle Corp.*, 627 F.3d at 387 (internal citation omitted). "The non-moving party must show more than the mere existence of a scintilla of evidence. . . . In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (internal citations omitted). The nonmoving party may defeat the summary judgment motion only by setting forth specific facts that illustrate a genuine dispute that requires a factfinder's resolution. *Liberty Lobby*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324. Although the nonmoving party need not produce authenticated evidence, *see* Fed. R. Civ. P. 56(c), mere assertions, pleading allegations, and "metaphysical doubt as to the material facts" will not defeat a properly-supported summary judgment motion, *Orr*, 285 F.3d at 783.

### III.    DISCUSSION

Defendants move for summary judgment on the basis that plaintiff will be unable to establish each element of his claims. The court considers each claim in turn.

**A.    Eighth Amendment Claim**

In his Eighth Amendment claim, plaintiff alleges that Paredes sexually assaulted him. As described more fully below, plaintiff avers that, during his reentry from ESP's recreational yard on September 11, 2013, Parades grabbed his genitals during a pat down. Defendants move for summary judgment on several grounds. First, they argue that Parades made no intimate contact with plaintiff, and the claim therefore fails as a matter of law because any contact was, rather than "cupping or groping," non-sexual and incidental to a permissible pat down. (#36 at 5-6.) Second, they argue that plaintiff characterized the search not as fondling, but instead as "excessive" or "overbroad" in his deposition, which thereby confirms that the pat down was simply thorough and not constitutionally infirm. (*Id.* at 6-7.)

Third, relying on *Heilman v. Cherniss*, No. 2:11-cv-0042-JAM-EFB, 2013 WL 3992420 (E.D. Cal. July 31, 2013), they argue that district courts in this circuit have examined nearly identical fact patterns and concluded that no Eighth Amendment violation occurred. (*Id.* at 7-8.)

Consistent with these cases, they contend that only plaintiff's subjective characterization of the physical touching renders it sexual, and because no other facts suggest a punitive or sexual motive on Parades's part, plaintiff cannot establish an unlawful state of mind. (*Id*.) Plaintiff's opposition is largely nonsensical, but the heart of his opposition is that the physical contact occurred as he alleges and, to the extent that the parties dispute this point, it is a genuine issue of material fact for jury resolution. (*See* #40 at 7.) He also contends that further discovery is appropriate as to what certain witnesses were able to view. (*Id*. at 11.) In reply, and in short, defendants argue that plaintiff has failed to demonstrate the existence of material factual disputes, and also that plaintiff has had ample and full opportunity for discovery, for which the deadline has now passed. (*See generally* #42.)

**1.    Standard**

"A sexual assault on an inmate by a guard—regardless of the gender of the guard or of the prisoner—is deeply 'offensive to human dignity.'" *Schwenk v. Hartford*, 204 F.3d 1187, 1196 (9th Cir. 2000) (quoting *Felix v. McCarthy*, 939 F.2d 699, 702 (9th Cir. 1991)). For this reason, sexual abuse of inmates violates the Eighth Amendment's proscription on cruel and unusual punishment. *Wood v. Beauclair*, 692 F.3d 1041, 1046 (9th Cir. 2012).

When evaluating an inmate's claim of unlawful sexual abuse, courts must consider (1) whether the defendant acted with a "sufficiently culpable state of mind" and (2) whether the alleged act was sufficiently and objectively harmful. *Id*. (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). The first, subjective factor embodies the "malicious and sadistic" standard. *Id*. at 1049-50. The state of mind may be assumed from the conduct itself only in absence of a legitimate penological purpose for the physical contact. *Id*. at 1049-50.

**2.    Analysis**

There is a genuine dispute of fact as to the second, objective element of the claim. Plaintiff alleges that Parades grabbed, palmed, and yanked his genitalia. (#4 at 4.) Ordinarily, allegations alone cannot create an issue of fact, *Orr*, 285 F.3d at 783, but plaintiff's complaint is verified (*see* #4 at 11) and the court must consider his allegations as sworn statements at the summary judgment stage, *see Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004). Plaintiff's

1  pleading statements stand in stark contrast to a sworn declaration that Parades submits, in which
2  Parades contends that he patted plaintiff's legs with the palm of his hand. (#36-4 at 3.) He does
3  not deny that he may have contacted plaintiff's genitals, but the contact would have been with the
4  back of his hand. (*Id*.) He expressly disputes plaintiff's contention that he cupped or grabbed
5  plaintiff's genitals. (*Id*.) In addition, plaintiff's own deposition testimony suggests yet another
6  version of the contact: there, plaintiff did not state that Parades fondled, groped, or yanked his
7  genitals, but instead that the contact was simply "excessive" and "overboard." (#36-1 at 10.)

8  These statements are the only facts in the record on the point, and they represent a genuine
9  dispute of fact. Notably, the IG's investigation concluded that no witnesses could have viewed
10 the exact contact that occurred due to the angles of the purported witnesses. (#36-3 at 4.) Thus,
11 only Parades and plaintiff can attest to what occurred, notwithstanding plaintiff's conclusory and
12 unpersuasive critique of the report's conclusion regarding witness angles. (*See* #40 at 3.)
13 Accordingly, the record contains statements by the only relevant persons, and no additional
14 discovery is required. Given the marked conflict in Parades's and plaintiff's descriptions of the
15 contact, what actually occurred between plaintiff's legs ultimately reduces to a contest of
16 credibility. Ordinarily, that fact-finding is the sole province of the jury. Although defendants
17 argue that plaintiff's version of the incident must be cast aside because his prior legal research of
18 sexual assault claims indicates his premeditation to bring such a claim whenever the opportunity
19 presented (*see* #36 at 8-9; #36-1 at 14), the argument speaks to plaintiff's motive and is only an
20 issue of his credibility. Notwithstanding that evidence, a reasonable jury is not precluded from
21 believing plaintiff. In sum, as plaintiff argues, the precise placement and movement of Parades's
22 hand is a disputed factual issue that could be decided in plaintiff's favor, and a reasonable jury
23 could determine that Parades's conduct is an objectively harmful action.

24 Nevertheless, Parades is entitled to summary judgment because the record precludes
25 plaintiff from demonstrating that he acted with a sufficiently culpable state of mind. The record
26 establishes that Parades initiated contact during plaintiff's return from the recreational yard and
27 engaged in a pat down of plaintiff to advance institutional security. NDOC policy permits strip
28 searches and pat downs of inmates during such reentries (*see* #36-5 at 4), and although strip

1  searches are apparently the regular procedure, Senior Correctional Officer Ratcliff ordered pat
2  downs on the occasion in question because of time-saving considerations. (#36-4 at 2.) The pat
3  down advanced the interest of institutional security (*see* #36-5 at 4), and, therefore, served a
4  legitimate penological interest. Accordingly, the court is not to presume that Parades acted
5  maliciously or sadistically, *Wood*, 692 F.3d at 1049-50, and plaintiff must point to evidence
6  demonstrating Parades's sexual or punitive motive to prevail on the subjective element.

7      That "something more" is required coheres with conclusions of other courts in this circuit.
8  For example, in *Nuriddin v. Estrella*, a court in the Eastern District of California recently
9  considered a case in which the plaintiff alleged that the defendant "gripped" and touched his
10 genitals without accompanying sexual comments, fondling, or other indicia of an overtly sexual
11 purpose. No. 1:11-cv-01448-SAB-PC, 2014 WL 727133, at *2 (E.D. Cal. Feb. 24, 2014). The
12 plaintiff specifically alleged that the defendant had gripped his genitals, penis, and rubbed along
13 his anus, which caused him to jump away and verbally inquire about the defendant's purpose. *Id*.
14 at *1. The court held that "[s]uch factual circumstances do not give [rise] to a plausible claim that
15 the search was conducted in a sexually abusive manner." *Id*. at *2. The court so reasoned by
16 comparing the facts to cases where correctional officers had daily fondled inmates during pat
17 downs, pressed their own genitals against inmates, or accompanied the alleged groping with
18 sexually suggestive comments like "let me feel on you" or "this way, it's more fun." *See id*.
19 (citing cases). As the court recognized, the weight of authority on facts involving a single
20 incident of grabbing requires more than the inmate's mere belief that the contact was sexual in
21 nature. *See id*. at *3 (collecting cases).

22     Likewise, plaintiff does not allege any facts, and the record presents none, that indicate
23 Parades acted for his own sexual gratification or to impose punishment. Plaintiff has had ample
24 opportunity for discovery on this and other points, and the court thus rejects the notion that
25 additional discovery would allow him to discover evidence of subjective intent. As plaintiff
26 conceded in his deposition testimony, Parades made physical contact during a pat down that was
27 merely "overboard" in plaintiff's view—but this thoroughness was consistently applied to
28 "everybody else" returning from the recreational yard. (#36-1 at 10.) Accepting plaintiff's

1  characterization as fact, only Parades offers an explanation for this purported excess: as a recent
2  trainee, he adhered to the instructed procedure carefully, rather than utilizing a cursory method
3  that other officers might use. (#36-4 at 3.) Plaintiff's belief that the conduct was sexual does not
4  make it so. Only his sweeping description of the incident as "sexual assault" supports his position
5  that Parades acted for gratification or any other impermissible purpose. Absent corroborating
6  facts that remotely imply that Parades acted for some other reason that institutional security,
7  plaintiff will be unable to establish the subjective element of the claim. Thus, despite the factual
8  dispute regarding the exact extent of contact, summary judgment is appropriate. Even if the
9  incident occurred as plaintiff alleges, he will be unable to establish the subjective element of the
10 claim and the court accordingly recommends that defendants' motion be granted.

**B.     First Amendment Claim**

In his First Amendment claim, plaintiff alleges that Foster interfered with his constitutional right to access the courts by delaying her second-level grievance response related to the purported sexual assault. Defendants move for summary judgment on the basis that Foster's actions did not delay, hinder, or otherwise interfere with plaintiff's ability to file a lawsuit against Parades. (#36 at 12.) Under NDOC policy, institutional officials must forward to the NDOC Inspector General ("IG") all allegations of sexual misconduct. (*See* #36-8 at 2-3, 5.) Defendants argue that subsequent grievances allow the inmate to exhaust his claim for the purpose of the Prison Litigation Reform Act ("PLRA"), but that institutional officials take no further action on grievances forwarded to the IG. (#36 at 12.) Defendants do not contest plaintiff's position that the response was late or untimely, but provide a copy of Foster's response that explained to plaintiff that his grievance remained before the IG. (*See id*.; #38-6 at 3.) Because she responded well in advance of the statutory limitations bar of two years, they argue that plaintiff will be unable to demonstrate prejudice with respect to existing or contemplated litigation and the claim necessarily fails. (#36 at 12.) Plaintiff's opposition makes no direct contest to the argument, and instead recites the law regarding supervisory liability and for failure to investigate. (#40 at 8-9.) He again claims further discovery is required. (*Id*. at 9-10.) Defendants reply that these arguments fail to defeat their entitlement to summary judgment. (*See* #42 at 5.)

1.  **Standard**

Prisoners have a constitutionally guaranteed right to access the courts. *See Lewis v. Casey*, 518 U.S. 343, 346 (1996). As the Ninth Circuit has explained, the Supreme Court roots the right at times in the Due Process and Equal Protection Clauses of the Fifth and Fourteenth Amendments, and at others in the First Amendment's Petition Clause. *Blaisdell v. Frappiea*, 729 F.3d 1237, 1243 (9th Cir. 2013). In either case, the right to access the courts protects inmates in several ways. First, it forbids prison officials from interfering with an inmate's efforts to litigate a case by seizing legal materials or otherwise interfering with an inmate's ability to actively litigate a filed case. *See Silva v. Di Vittorio*, 658 F.3d 1090, 1102-03 (9th Cir. 2011) (discussing the "interference line of cases," under which prison officials may not erect barriers "that impede the right of access). Second, the right "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 828 (1977). In both type of claims, the plaintiff must allege and demonstrate "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Nev. Dep't of Corrs. v. Greene*, 648 F.3d 1014, 1018 (9th Cir. 2011) (quoting *Lewis*, 518 U.S. at 349).

2.  **Analysis**

The court first addresses two preliminary matters. Plaintiff's argument for discovery is without merit for the reason already stated. Moreover, this case does not contain claims against Foster for supervisory liability, and the court declines to allow plaintiff to add them at this late stage. To the extent such claims were a part of this lawsuit, they would necessarily fail because, as the court reasoned above, plaintiff lacks a viable Eighth Amendment claim. Accordingly, there is no predicate liability upon which Foster could be liable in a supervisory capacity.

Foster is entitled to summary judgment on the First Amendment right-of-access claim. First, as defendants correctly argue, no basis exists from which a reasonable jury can conclude that plaintiff was prejudiced from Foster's delayed response. Absent facts that will allow him to establish such prejudice, plaintiff will be unable to prevail. *See Greene*, 648 F.3d at 1018.

1    Indeed, plaintiff's grievance ultimately led to his filing of this lawsuit, and he fails to articulate
2    how, exactly, he suffered prejudice in his ability to litigate this case due to her purported delay.

3    Second, mere delay in responding to a grievance cannot ordinarily serve as the basis for
4    prejudice in a right-of-access claim.  It is true that prisoners have a First Amendment right to
5    "'file prison grievances'" *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2004) (quoting *Bruce*
6    *v. Yist*, 351 F.3d 1283, 1288 (9th Cir. 2003)), as constitutionally-protected access to the courts
7    may turn on accessing and exhausting the grievance process, *Lewis*, 518 U.S. at 348.  Yet the
8    Ninth Circuit has long held that inmates lack a separate constitutional right to any specific
9    procedures in a state-created prison grievance system.  *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th
10   Cir. 2003); *Mann v. Adams*, 855 F.3d 639, 640 (9th Cir. 1988).  "[B]ecause inmates have no
11   constitutional right to a prison grievance system, the actions of the prison officials in reviewing
12   [the plaintiff's] internal appeal cannot create liability under § 1983."  *Ramirez*, 334 F.3d at 860.

13   Where a grievance process is available, the inmate must comply with it to exhaust his
14   claims prior to filing in federal court.  *See* 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516,
15   524 (2002).  But a delayed response or other actions that render the process effectively
16   unavailable excuse the exhaustion requirement.  *Nunez v. Duncan*, 591 F.3d 1217, 1226 (9th Cir.
17   2010).  Thus, an official's delay in responding to a grievance does not prevent the inmate from
18   filing suit.  Such non-purposive delay does not typically interfere with the inmate's right of access
19   because, under *Nunez* and similar cases, he may proceed to file suit and thereby adhere to the
20   statute of limitations or other filing deadlines.  The court does not go so far as to say that delay in
21   responding to a grievance, or other active interference via the grievance process, never may
22   constitute prejudice for an access claim.  *See, e.g.*, *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir.
23   1995), *overruled on other grounds by Shaw v. Murphy*, 532 U.S. 223, 230 n. 2 (2001).  Yet the
24   facts required to create prejudice in such a scenario are rare given the *Nunez* exception, and in
25   light of plaintiff's ability to timely file his complaint in this case, such facts are absent here.

26   ### IV.    CONCLUSION

27   The court has considered the motion and the parties' papers, and for good cause
28   appearing, the court recommends that defendants' motion for summary judgment (#36) be

9

granted in its entirety.  Because the court has determined that plaintiff's claims fail on their merits, it does not reach defendants' qualified immunity arguments.

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt.  These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V.   RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendants' motion for summary judgment (#36) be **GRANTED**;

**IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** and close this case.

**DATED**: August 24, 2015.

_____
**UNITED STATES MAGISTRATE JUDGE**